We will hear argument now in our second case. Is it Keita? Am I saying that right? Is your client's last name Keita? Her name is Kadiatou Keita. Keita. We will hear argument in 24-1226, Keita v. Bondi. Ms. Kelly, when you're ready. Thank you. May it please the Court, my name is Nancy Kelly, and I represent Kadiatou Keita in the case before the Court. The question, as we see it before the Court today, is whether the BIA and the immigration judge erred in denying her application for cancellation of removal based on the government's concession that she was eligible for withholding of removal. Excuse me. The immigration judge was essentially dealing with two issues here, whether she was eligible for withholding of removal and whether she was eligible for cancellation. She was a single mother from Guinea. She had two U.S. citizen daughters. She had been subjected to female genital mutilation in Guinea. She submitted substantial documentation of the situation for women in Guinea, and the government conceded that she was, in fact, eligible for withholding of removal. I want to make sure I understand this. What do you understand to be the theory on which she was granted withholding of removal? Okay. Withholding of removal, when you apply for withholding of removal, you generally apply for both asylum and withholding. I understand that. Okay. Withholding of removal is based upon a finding that you have shown that it's more likely than not that you will be subjected to persecution should you be returned to the home. But you, so this is, sorry, that helps to clarify. Was she granted withholding based on risk of harm to her or risk of harm to her children? She was granted it based upon the risk of harm to her. And what is the risk of harm to her in the sense that the bad thing, and I don't mean it by any means to minimize the bad thing, but the bad thing has already happened to her. So I'm trying to understand the risk of harm to her. Okay. First of all, there is not a lot of discussion on the record, and I do not represent her below. So what she, and there was a concession. No, I guess maybe this is a more appropriate question to ask the government. On what theory did the government concede she was eligible for, but on what theory did she seek withholding of removal? Let me ask you that.  I can explain this by this. If you have been persecuted in the past, you create a rebuttable presumption that you will be persecuted in the future. But it's a rebuttable presumption.  It's a rebuttable, not a conclusive presumption. Right. There is, correct. But in addition to the FGM, there is, there was a lot of documentation on the record concerning the treatment of women and the life that she would be living as a single woman. And there has been a recognition that FGM is not necessarily a harm that's inflicted once and is over with.  There are lasting effects, and it can, in fact, be imposed more than once. So based upon that, she was denied cancellation. When they looked at the cancellation case, the government conceded that she had been there for the requisite 10 years. They conceded that she was a person of good moral character and that she was not barred by any of the criminal grounds. The question that they were dealing with was whether her children would be subjected to exceptional and extremely unusual hardship as a result of their mother's removal. The assumption before the court was that she would be taking the children with her and that they would be returning to a situation or going to a situation which had resulted in the persecution of their mother and that they would be then subjected to similar treatment. But how is that true if she will not be removed to Guinea because she's been granted withholding of removal to Guinea? Here, I believe, is where the confusion really begins. The immigration judge said she would not be removed from the United States. Withholding of removal is a form of relief that only protects you against removal to Guinea. But the only argument being made in front of the I.J. was that there would be this exceptional and very unusual hardship if the girls went with their mother to Guinea. And so putting to one side, if the I.J. like used the wrong word at some point, if that's the argument for the hardship prong and that hardship is not going to happen, why was your client, why should your client have gotten cancellation? The language of the statute is that they would be subjected to exceptional and extremely unusual hardship if the mother is deported. Well, no, the language of the statute says establish that removal would result in exceptional and unusual hardship. And if we've established because of the grant of withholding that any removal is not going to be to Guinea, why do arguments about what would happen in Guinea help establish that removal would create that situation? Under the grant of withholding, she could still be removed from the United States.  And her children would suffer the hardship of having her essentially taken away from them without any notice. Their future would be completely uncertain. It would not be clear. But was that argument in front of the I.J.? It looks from the hearing as though the only argument being made to the I.J. was there will be this exceptional hardship if the girls come with me to Guinea. And I'm not blaming anyone. It's 2016. There is very little third country removal going on at that time. So it does not surprise me that this was not front of mind for people. But I am struggling with why, if that argument wasn't made before the I.J., it was error. Before the I.J., the immigration attorney argued the conditions under which she would live, the limited conditions with the withholding order. He did argue that this is very different from... In the United States, even if she's not removed. Even if she were to remain in the United States. Now, the issue that I think the primary error that the immigration judge made is he actually equated adjustment of status or asylum with withholding. So he was assuming, based upon language that was argued by the government attorney and that exists in the regulation, which limits grants of cancellation where the parent would be getting asylum or withholding, I'm sorry, or adjustment of status with withholding. Both asylum and adjustment of status lead to permanent resident status. The immigration judge... I understand that argument. And the I.J. language did use the word moved and did say no possibility. I don't know if that means for sure that the judge was equating those, but regardless by the time we get to the appeal to the board, it seems like the board is addressing pretty clearly that they're not the same and that, yeah, it's not permanent, but you have an opportunity if something were to arise to re-argue it. I know you don't like that and think that's not as protective and it could be denied, but it seems like if we're looking at the final board decision, the argument about what the I.J. might have meant or might not have meant is less important. The board, however, did not consider that she could actually be removed from the United States with the grant of withholding of removal in place. What the board said in both decisions is it recognized that it was not necessarily permanent and it could be revoked. And the board said basically that should it be revoked, she could deal with the motion to reopen and try to have... How does that not directly indicate the board considered that she could be removed from the United States? There's a distinction between revocation and the withholding order as it stands. In order to remove her from the United States, the Immigration Department of Homeland Security needs to do nothing. They have an order in place, they have a removal order, and they can send her out. In order to revoke it, which is what the board talked about, that would take away the grant of withholding and she then would be removable to Guinea. So nobody here, neither the judge nor the board in either of its decisions, recognized that she was susceptible to being removed from the United States with the current order in place. But I guess, so you infer from the fact that nobody addressed that that that's because the agency didn't understand that the possibility existed for third country removal. And I guess I think that I'm suggesting that maybe the more natural inference is nobody addressed it because your client had never argued, if I am removed to some other third country, my children will also suffer this unusual hardship. A different form now, not female genital mutilation, but some different exceptional hardship. I think the natural inference is that nobody, neither the judge nor the BIA addressed that because that argument wasn't in front of them. It was argued to the board, Your Honor. The IJ or the board? It was argued to the board. And what's the best site that I will find for the proposition that it was? Your Honor, I cannot give you that site specifically. Well, you'll have some rebuttal time. But it is mentioned in the brief and it is mentioned in the motion to reconsider. And can you tell me what that argument, what is the argument? Actually, I think I know the part of your brief you're talking about, but what I could not find anywhere is what is this argument that nobody has addressed? What is your client's argument that there is no country in the world to which she could be removed where her children would not suffer this extremely unusual and exceptional hardship? Your Honor, the standard that has always been applied is whether the parent, removal of the parent to the home country would result in the requisite hardship to the children. The, granted, it would be an extremely unusual situation that that would happen before recent policies have been in place. But there has never been a case that I have been able to find where the court has said, excuse me, that an applicant is required to show that there is no third country to which she could be sent. But if that's not your argument, I guess I don't understand. I'm just very confused as to what your argument is. I'm sorry. No, no, I'm sorry. I feel like we're in the, I am troubled by the fact that this case arose so many years ago in 2016 when basically, practically speaking, there was no such thing as third country removal. So none of this has been set up, none of this was set up in 2016. But now here we are. And I thought part of your argument was my client never got a chance to argue about third country removal. And I'm just asking you, what would the argument be? And if it's not going to be some form of, look, I am a single mom. Wherever I go, I'm going to have to take my two kids with me. They will be massively dislocated. It's going to be some country where I don't know anybody. I have no support system. It's going to be a disaster for my kids. If it's not that, there is, in fact, no country to which I can be removed without having this harm befall my children. What's the argument? The argument is, in fact, that if she is removed to a third country, she has absolutely no control over that. If you look at the policy that was included with the government's brief, it essentially provides the client with no say in where she goes, except to the extent that she can prove within 24 hours that that country would persecute her or would torture her. That is, under the circumstances of the policy, that is virtually impossible to prove. The idea that an individual before a judge pressing a cancellation case would be required that there is no third country to which she could be sent without the requisite harm to her children would require her to essentially address every country in the world, because each country would have to be viewed in light of the circumstances that those children would face if they were sent there, but it also would have to be addressed in light of what would happen to those children should they be separated from their mother, because there would be no guarantee that they would, in fact, be able to accompany her. And the policy in place makes no consideration of that whatsoever. Withholding looks only at the harm to the parent. It's a very high standard, and the standard that's applied in doing removals to what are considered to be third countries does not consider the children either. I very much want to make sure I understand what you're saying. One of your arguments is this, I mean, I guess it's framed sort of as a due process argument, but this idea that there should have been a chance at the hearing for your client to make additional arguments, but I hear that what you are telling me now is your client could not, at the IJ hearing, have made an argument against that any kind of third country removal would have caused an exceptional hardship. That's just like not a thing that could be done. She could, Your Honor, have put forth arguments regarding the circumstances of the children should their mother be taken away from them. She could also have put forward arguments concerning the circumstances under which the mother would live were she to remain in the United States and how that would impact their lives. Well, that actually did come up at the IJ hearing where her lawyer said there's no, unlike, withholding is not as good a remedy because it doesn't bring certainty to life in the United States. I think that argument was in front of the IJ. Yes. Thank you very much. You've got some time. Good morning, Your Honor. This may please the Court. My name is David Shore, and I represent the Attorney General of the United States. The petitioner in this matter, Ms. Kida, conceded that she is removable as charged after entering on a student visa and failing to enroll. On what basis did the government concede withholding? Your Honor, the record does not disclose that. I'll just tell you, I'll just say this. This feels to me like an egregious bait-and-switch by the DHS attorney at this hearing. So I will concede withholding on what at least to me seems like a relatively dubious basis, because I'm actually not sure on what basis she gets withholding, in order to take out what would otherwise be a slam-dunk cancellation argument. I — now, I understand — I understand — This is a real, real, real we're trying to screw someone over by pretending to do something nice for them. I don't — I don't think that's fair, Your Honor. You agree that absent withholding, she'd have a great cancellation argument, right? I — I agree that it would be a strong claim of hardship, a real strong claim of hardship. I — that's not — there are other, of course, facts that could have come up, certainly. Okay. I just — DHS is not in the habit of conceding withholding, so my ears sort of prick up when I see DHS concede withholding. Well, so — so, you know, FGM cases, of course, involve, you know, an egregious harm. And there is board precedent that says — well, certainly, there could have been enough to — and I'm just sort of reading tea leaves here, but there could have been enough for there to be a presumption of a clear probability of persecution on account of, you know, gender, religion, tribal membership. So there could have been enough, and — The DHS attorney seems to me to actively try to mislead the I.J. that says anybody who get withholding can't get cancellation, which I notice is a position that you do not defend. Well, I — well, I would — I would respectfully disagree, Your Honor. I don't think the DHS attorney was trying to mislead. I think the DHS attorney may have been — Deeply mistaken about basic principles of immigration law? I wouldn't — I wouldn't go that far. But — but — The government — May have been mistaken. The government does not currently advance the argument that getting withholding renders you categorically ineligible for cancellation. No. No. A grant to withholding certainly might make it more difficult as a factual matter to prove — Unlike, say, asylum. It's not like it's irreconcilable with. It's not — it's — they're not mutually exclusive options.  Okay. Correct. So, now, I understand the frustration by petitioner thinking — walking into court and thinking, I've got a strong claim of hardship. But it's also important to remember that even if you do have such a claim, you are not guaranteed a grant of cancellation of removal. It is a discretionary remedy. And it's an extraordinary remedy limited to 4,000 grants a year and only to the most deserving applicants who have no other recourse. As a descriptive matter, how often do IJs deny cancellation to people who are found eligible for cancellation? I — I don't have those numbers. You're just saying it's super common? Yes, Your Honor. No, wait. It is super common or it's not super common? To people who are eligible in terms of establishing —  If the IJ finds that a person meets all of the eligibility criteria, how often, as a descriptive matter, in your experience — I'm not asking for stats — how often do IJs then say, you meet all of the criteria, but the answer is no? It would really depend on the facts. Now, I don't — Does it happen a lot, would you say? So I think that it's relatively rare that IJs find they meet the full criteria. I know. I'm reducing the universe down to those where we find you meet all the criteria. I would be guessing, Your Honor. I feel like if you were confident that it happened a lot, you would say it happens a lot. Sure. And so I can only say that I don't know. And I apologize. So the question before the Court is whether the Board reasonably denied cancellation of removal in this case. Where her removal to Guinea will not occur. Nowhere in the Board's decision does it say withholding of removal is not country-specific. Nowhere does it say it's permanent, it confers durable status. The Board understood exactly what cancellation of removal was, and that her removal to Guinea would not occur. Now, the petitioner presented before the immigration judge a very narrow theory for cancellation of removal. Not only was it country-specific to Guinea, but it relied on a single factor, FGM to the daughters. No other hardship whatsoever was alleged to the immigration judge. But in fairness, just so I understand the procedure in front of the immigration judge, my concern about this is that probably that was supposed to be done at the hearing, right? Like there's going to be a hearing where she gets to say her piece, and as I understand it, she keeps coming to these hearings, and she never gets a chance to talk and like actually explain what the hardship perhaps beyond female genital mutilation would be to her children. And it sure sounds at the end of the hearing, there's that, I mean the hearing itself is a complete mess, and I join with my colleague in being sorry that the DHS lawyer appears to have contributed significantly to all the confusion. But at the end of the hearing, it does seem pretty clear that the lawyers are being asked to brief only this kind of red herring question of whether relief is categorically foreclosed because of the withholding grant. And then there's a hearing scheduled. There's a day at which they will come back and make their factual eligibility arguments. That hearing never happens. Correct. I am concerned that there's some sandbagging going on here. Probably unintentional. Sandbagging sounds intentional. But that just the way this developed, there was never a chance. I mean you say her argument was so narrow, it was just about the female genital mutilation, but of course it was because there was never a chance to develop an argument. Yes, Your Honor. So after the immigration judge had granted withholding of removal, the immigration judge and, you know, there was the objection from DHS counsel about going forward. So the immigration judge counsel said, could I have briefing please? Could I have briefing on whether to go forward with the 42B hearing? That would be the cancellation hearing. And briefing on the issue that was raised here of hardship. Briefing on hardship. She could have presented a brief. She could have presented an affidavit. Can I just, what if, why don't you, what if we assume hypothetically that the fairest reading of this hearing, when you look at the whole thing, is that the lawyers reasonably understood that they were being asked at least just to brief this legal categorical exclusion question. The argument might still be, like, that's fine. That's what they were asked to brief, but they could have briefed anything. Are you making that argument or are you saying, no, no, they were asked to brief the factual case as well? So, well, you know, the immigration judge specifically asked for briefing on hardship. Now, as far as briefing the factual case, I don't think the immigration judge demanded. But how is that true? Because, okay, this is the single most, I mean, this is an extraordinarily troubling transcript to me in a variety of ways, but the single worst part of this whole transcript to me is the JA-156 carrying over to JA-157. Your Honor, the respondent has asked me if she can say anything. Judge to counsel, no, no. The non-citizen, okay. Judge, this would be legal issues to be resolved at this point. Whether or not she can make a hardship showing is not a legal issue, but what is a legal issue is whether getting withholding makes you ineligible for cancellation of removal. Your Honor, respectfully, hardship as an eligibility requirement is a legal issue. It's a mixed question. I know. It's a mixed question, but she's got to make facts. I mean, it just feels like we're saying she hasn't made any arguments what the facts would be, and the one time she asks if I can talk about facts, the judge is like, it's a legal issue. The thing I want briefing on is a legal issue. Well, sure. Well, at that moment, I was doing a colloquy between the attorneys and the judge as opposed to taking testimony. But I would also, you know, from the prior page, JA-155, that's where the immigration judge is saying, should we proceed to a hearing? I would say that in an H-138, judge to counsel, now I have to argue my legal decision saying we can't enter decision, and then have it severed. We've got two forms of relief. Anyway, how much do you need to prepare your brief? The judge is talking about this legal smokescreen that DHS has created at the hearing. I would respectfully disagree, Your Honor. But I would say this. Even if that's accurate, even if I'm mistaken, where is the claim of hardship to the board? Where is the claim of the hardship in the motion to reconsider? There is none. There is, basically, the argument is I deserve a hearing, which will basically be a deposition where I figure out what my claim is, because there's no allegations that were made whatsoever of I can satisfy the hardship standard. And I want to be very clear, it is not the government's position that an applicant has to prove hardship in every possible country in the world. What the applicant must show is that the removal of the applicant. Hey, counsel, don't take this the wrong way, but could you lower your voice a little bit? I apologize. It's pretty loud. I apologize. I'm all good with enthusiasm, but coming up here is coming a little loud. Sorry. I'm not criticizing. Just ask it. So the burden is to prove exceptional and extremely unusual hardship in the event of removal. Here, again, not only was it country-specific, but it was the one factor of FGM that was argued. Nothing was presented to the immigration judge, and even if it was error, the immigration judge didn't give the opportunity. Well, one, there's no due process right to a hearing. What the statute gives is a reasonable opportunity to present evidence. But nothing was argued before the board about, hey, I have a claim of hardship that survived the grant of withholding. Well, this is the very end of the BIA's decision, J.I. 109. The respondent also claims on appeal that her due process rights were violated and that she did not receive a full and fair hearing and an opportunity to present her claim of cancellation removal. However, the immigration judge requested briefing on the issue. What if I think that's just dead wrong, that I don't read the immigration judge's requesting briefing on that issue? Well, then any error by the board is harmless because there is no, it was never perfected, a claim of hardship beyond FGM. Nothing was indicated. Nothing was sneezed at by the petitioner. But the BIA didn't say that. The BIA could have said that. The BIA could have gone on and said, in any event, it doesn't matter because she doesn't make any prejudice arguments, so we also, but they don't say that, right? They rest, as I read this last paragraph of the BIA's decision, they are resting entirely on the belief that she was given an opportunity to present this claim to the IJ. That is the basis of the BIA's decision, right? Well, yes. And again, I think that's a fair reading. But what if I think that's dead wrong? Well, then any error is harmless. How can I do harmless error on an issue the BIA never addressed? Because what this case comes down to, Your Honor, is party presentation. And nothing was presented to the agency. No claim of hardship beyond FGM. It just seems like a tenory problem to affirm the BIA's decision based on a conclusion the BIA didn't give. I understand. But where there is, where any error is harmless, which it is here, the court can still affirm. There's a harmless exception to Chenery? Well, Chenery, well, so, you know, it is not a ping-pong match, certainly as the Supreme Court has said, where it has to go back and forth. And for an unraised claim of hardship that, again, was never presented. I mean, the standard, isn't it that there's not the slightest possibility there'd be a different result in that case? Isn't that the white lion standard? That may be, yes, Your Honor. Yes. And so she does, in the brief to the BIA, there are, the brief does say, look, I could be removed to a third country. There is no follow-up. So that issue, this third country, the possibility of third country removal is raised. So is your point that there is no sort of follow-up for and why that would be, if I were removed to a third country, why that would be? That is a big part of it, yes, Your Honor. There is no claim like that. There is no claim of hardship whatsoever beyond FGM in Guinea. And then there was an argument, I didn't have a hearing to present evidence, but we don't have any idea what the evidence would have been, what the claim is. Because it was never argued to the immigration judge or the board on appeal. And I do want to make one other point about the concurrent adjudication of applications. Now, the... Before we leave the question of, I just had one other thing. This case, I find this case very difficult. And again, I think a lot of this is just the timing, that nobody really has their eye on this third country removal issue at the time. The briefs to the BIA never mentioned the phrase due process. The petitioner doesn't say, I'm bringing a constitutional due process claim. The government doesn't use the words due process, constitution, although I think it might cite one or two cases on prejudice in that context. In your view, did the BIA... Was the BIA treating this as a constitutional due process claim? Was this a due process issue, even though nobody argued it that way? Or were they just kind of using due process colloquially? Like, look, she argued she didn't have a chance to make her argument. We think she did. I don't... I apologize, I don't recall from memory whether the petitioner's filings, you know, never used... I can tell you, they did not. They did not, okay. Well, so as far as her entitlement to a hearing, the board, I believe the board invoked due process. They did, like, small d, small p. That's my question. Did the board take it upon itself to treat this as a constitutional issue, even though no one had argued it that way? Or were they... Was this more colloquial? Well, I think the board construed the argument of, I didn't have the evidentiary hearing to, you know, it construed that argument, I think, in due process terms. It's very aggressive. I mean, it reads more like a statutory argument. I'm supposed to have a meaningful opportunity to present my claim, but okay. On the due process front, do you agree with me that whether someone is eligible for cancellation of removal is not a discretionary determination committed to the agency? That's correct, Your Honor. That's a pure question of law? Correct. Okay. So how would I possibly not have a due process interest in the question of whether I am eligible for cancellation of removal? Well, as this Court has held, due process claims are not cognizable where the ultimate relief is discretionary. It's completely irrelevant the basis for the denial of that relief, whether it's a legal, factual, or discretionary determination. There is no protected liberty interest in discretionary relief, so no due process, no procedural rights attach. This Court has said that... What are you believe the best cases for the proposition that, I mean, I 1,000 percent agree with you that the second order question, do I actually get it, is something I have no protected What are your best cases for the proposition that, Step 1, there is no due process liberty interest in? I believe the case cited in the brief, I believe it's Smith v. Ashcroft, I believe off the top of my head. I apologize if that's incorrect. Are you familiar with our decision in Enum v. McKaysey from 2008 holding that an IJ in asylum proceedings violated the due process clause at Step 1? Not off the top of my head, no, Your Honor, I apologize. So if I represented you that this Court has actually said in some context that interest, that you can have a due process interest in Step 1, if we held that in 2008? I would defer to the Court, Your Honor, on that, and I do apologize that I'm not aware of that case. But I would say this, though, that there was no procedural error, and she had the opportunity when the immigration judge requested briefing. Can I ask you, so I am sympathetic to a lot of your arguments, and there is a part of me that finds this case so frustrating because I kind of feel like it should be an easy case, and it would have been an easy case two years ago. But now it does seem as though there is a plausible prospect that the petitioner in this case could be picked up and within 24 hours removed to a third country with no chance to make any of the arguments that we're talking about now, about how would that affect her two children. And that seems to present a real problem here, if you think, and I do think this is, just assume for a minute, I think that the fairest reading of this 2016 hearing is that there was no opportunity to raise that kind of a factual argument, and there's not going to be a chance to raise it, apparently, before this woman is removed to some country she's never set foot in. And so what am I supposed to do with that? So a couple of things, Your Honor. Ms. Kida is a class member of the litigation currently pending in the First Circuit, and I believe in the district court also in Massachusetts, and that's sort of sussing out the due process rights of individuals removed to a third country. So that's not an issue before the court today. That's first. Second, anyone who is... Can I just stop you there? I totally understand that we are not here to resolve that question, but it's part of the world we're operating in. I don't know that we can completely divorce it from this. The arguments that, wait a minute, I never had a chance to present my arguments about third country removal would carry a lot less weight, I think, if we could say, as the Board did as to revocation, don't worry, there will be a chance to raise it before you're removed. But that's just, at least as of now, that is not the government's policy. Well, anyone granted withholding of removal can be removed, of course, to a third country. And nothing in the Board's decision indicates that it misperceived that. I understand that. So it's true of anyone with an outstanding removal order that they don't necessarily get another bite at relief from removal. Perhaps a protection claim, withholding, CAT, et cetera. But in terms of relief, that's what the removal hearing was for. And that's true across the Board. So she had that opportunity. She had an opportunity to present whatever theories of hardship that she wished to present. Nothing beyond FDM was alleged. So I think we actually... Right. If you think she had the opportunity to present that argument at the 2016 hearing, I totally agree with you. Like, you get one chance. But if you think she didn't have that chance at the 2016 hearing, it seems to me it matters. Then it starts to matter that at the back end she's also not going to have that opportunity. Do you see what I'm saying? Yes, Your Honor. Because nothing was presented and a removal hearing is not a deposition. It's not an opportunity to discover what your claim is. Or apparently a candy store in the ill-chosen words of the DHS attorney. Yes, Your Honor. And so the government asked that the court deny the petition. Thank you, Your Honors. May it please the Court. Your Honors, I would point out that the immigration judge's decision, which follows a back and forth with the government attorney at the time who repeatedly asserts that Montréal, and González-Rosinas, which are the cases that address the standard to be applied in a canceled evaluating eligibility for cancellation, indicate that she would be ineligible because those cases consider another means of immigrating being a negative factor that should be considered. The immigration judge in his decision said, and this is a quote, the respondent's basis for exceptional and extremely unusual hardship is moot as a result of being granted withholding of removal. He also says, without the possibility of removal, the respondent is unable to demonstrate any hardship to her U.S. citizen children. So effectively, what he said in his decision is she could not make a case. There was no case for hardship which she could make in light of the grant of withholding. The board then, in considering the judge's decision, said that the judge had fully considered the evidence and he had fully considered the factors and that they approved his decision, yet they also did not consider that the grant of withholding left her vulnerable to immediate removal to a third country. She did, in fact, try to speak at the hearing, the last hearing which she was present, and the judge stopped her midsent just as she tried to speak. He said no, he would not let her speak, and it's very, very clear from the exchange between the judge and the attorneys that he determined whether or not they would be allowed to go forward to have a hearing on her eligibility for relief based on hardship. She never got that chance. Another issue, Your Honor, if I could raise it, is the question of concurrent adjudication, concurrent adjudication of the board in its denial of the motion to reconsider. One of the issues we had raised at that time is that the judge should not have entered the decision on the withholding case because that is a post-removal order form of relief, and cancellation is to be granted before the removal order enters. And how would we square the argument you're making with Orlano? Excuse me? This court's decision in Orlano where we basically said that a similar regulation doesn't create any enforceable rights? I'm sorry, I'm not familiar with that. I can't address that. What I would say is that this regulation clearly was cited by the board. Counsel, as I understand the procedural history, when the immigration judge made the ruling on withholding and said we're going to deal with briefing on cancellation, there was no objection to the sequencing there. When you appealed to the board, there was no objection of the sequencing there. When the first time any sequencing issue came up was in the motion to reconsider, and that was that the, that was the cancellation needed to be decided first, not concurrent. And so the first time this concurrent argument has come up is now. Now, granted, it didn't come up. No one cited the reg about concurrent until the motion to reconsider. But we'd be the first court to address this concurrent issue in this case, right? Well, Your Honor, the board, in fact, rejected the argument that we put forward regarding the decision regarding cancellation prior to the decision. And as part of why it denied it was that the board itself cited the regulation saying that they should have been decided concurrently. I know. My point, though, Counsel, was your argument was that cancellation should go first. And it's fine to say the board was wrong but it seems, you know, I get the argument that, okay, the board in rejecting the argument that your cancellation goes first cites to a reg that says they should be dealt with concurrently. But you never argued concurrently below. You never made the argument that, hey, these need to be considered concurrently. Do you agree with that? I do agree with that, Your Honor, but I would say that once the board has raised it on its own and in fact relied on it as a part of its decision in rejecting it.  you don't, what do you mean by they have to make this decision concurrently? You actually mean they have to make it independently, right? I don't understand. Well, if in fact they are adjudicating the cases concurrently then they would necessarily have to decide them independently. I don't understand that. It sounds like the opposite to me. Well, if they are looking at each case at the same time and making their determination about eligibility under the standard relevant to each individual case, they could not then take a decision from one case and use it to deny another. So you think the regulation done independently but at the same time. So you think the regulation that says we want you to consider and decide all of these issues concurrently actually means decide them separately without reference to each other because that seems like a funny way to say that. Yes, Your Honor.  Yeah. All right. Thank you very much. Thank you. We appreciate it. We will come down  in Greek Council.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Toby J. Heytens